UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSALINDA SALAS f/k/a
ROSALINDA ROBINSON,

   Plaintiff,

v.

FINANCIAL RECOVERY SERVICES, INC.,

   Defendant.

Case No. 1:21-cv-03375

## COMPLAINT

**NOW COMES** Plaintiff, ROSALINDA SALAS f/k/a ROSALINDA ROBINSON, through undersigned counsel, complaining of Defendant, FINANCIAL RECOVERY SERVICES, INC., as follows:

## NATURE OF THE ACTION

1. This action is seeking redress for Defendant's violation(s) of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*.

2. Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e).

3. The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects … debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).

1

4. Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence of the threat thereof, §§ 1692d(1), (2). *See* generally §§ 1692b-1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293, 115 S. Ct. 1489, 131 L. ed. 2d 395 (1995).

5. The Act is enforced through administrative actions and private lawsuits. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577, 130 S. Ct. 1605 (2010).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8. ROSALINDA SALAS f/k/a ROSALINDA ROBINSON ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 610 Knollwood Drive, Cary, Illinois 60013-2465.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

10. FINANCIAL RECOVERY SERVICES, INC. ("Defendant") is a corporation organized and existing under the laws of the state of Minnesota.

11. Defendant maintains its principal place of business at 4150 West 77th Street, Suite 200, Edina, Minnesota 55435.

12. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).[1]

---

[1] Our organization provides comprehensive custom collection and receivables management solutions to mid-large sized organizations that already possess some type of collection or receivables management platform. Our services are meant to compliment and add value to their existing processes. By utilizing our services, organizations are able to focus on their core business segments and leverage their efforts resulting in greater efficiencies. Our ability to deliver

2

13. Defendant uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

14. Plaintiff applied for a Jared Card Account.

15. Plaintiff's application was approved, and Plaintiff received a credit card in the mail bearing an account number ending in 3404 (the "Account").

16. Plaintiff accepted the terms and conditions by using the credit card for personal and household purchases.

17. Over time, Plaintiff made $785.08 in charges to this account.

18. Plaintiff's $785.08 balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

19. However, Plaintiff's financial situation changed, Plaintiff defaulted on payments, and Plaintiff's $785.08 balance was charged-off and was assigned, sold, or transferred to WSFS, FSB, as Trustee for CVI.

20. Soon thereafter, Plaintiff's $785.08 balance was referred for collection.

21. Defendant hired CompuMail, Inc.[2], a Concord, California-located commercial mail vendor, to send dunning letters.

---

cost effective services by leveraging our state-of-the-art infrastructure and our highly trained workforce has helped us to become a leader in the industry. Our comprehensive collection and receivables management solutions are provided to leading organizations in the financial services, retail, debt buying, telecommunications, utility, and related markets.

\*\*\*

Since 1996, Financial Recovery Services has excelled in the field of debt collections and receivables management. In the process, FRS has won numerous awards and distinguished itself as a proven solution to a variety of organizations. https://www.fin-rec.com/who-we-are/about-us (last accessed June 23, 2021).

[2] **Why CompuMail?** Over the past 20 years, CompuMail has become the premier direct mail company in the United States. For most of our history, we've specialized as a collection agency mail vendor, but we now offer services for any industry requiring the best direct mail solutions. https://www.compumailinc.com/ (last accessed June 23, 2021).

22. Upon information and belief, Defendant electronically transmitted to CompuMail certain information about Plaintiff, including, among other things: (1) her status as a debtor; (2) the exact balance of her debt; (3) the entity to which she owed the debt; and (4) that the debt concerned Plaintiff's Jared Card account.

23. CompuMail used this information to generate and mail Plaintiff a letter, dated February 11, 2021 (the "Letter").

24. The Letter contained highly sensitive and personal information related to Plaintiff, including: (1) Plaintiff's name and address; (2) that Plaintiff owed a debt; (3) the entity to which Plaintiff owed the debt; (4) the exact balance of Plaintiff's debt; (5) that Plaintiff's debt was in default; and (6) that Plaintiff's debt was being collected by a debt collector. *See* Exhibit A.

## ARTICLE III STANDING

25. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such that "a plaintiff … need not allege any additional harm beyond the one Congress has identified." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549, 194 L.3d 2d 635 (2016).

26. *Spokeo* instructs that in determining whether a statutory violation confers Article III standing, we should consider "history and the judgment of Congress." *Id*.

27. Starting with history, we can discern a concrete injury where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*.

28. Put differently, we look to "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky v. Godiva Chocolatier, Inc*., 979 F.3d 917, 926 (11th Cir. 2020) (en banc).

29. *Muransky* explains that the "fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether the harms matchup between the two." *Id*.

30. For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts. *See, e.g., Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

31. By 1977, the Restatement (Second) noted that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Restatement (Second) of Torts* § 652A cmt. a. (Am. Law Inst. 1977).

32. More particularly, the term "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." *Invasion of Privacy*, Black's Law Dictionary 952 (10th ed. 2014).

33. It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Restatement (Second) of Torts* § 652D (1977); *accord, e.g*., 77 C.J.S. Right of Privacy and Publicity § 32; 62A Am. Jur. 2d Privacy § 79.

34. Indeed, the Supreme Court itself has recognized "the individual interest in avoiding disclosure of personal matters" and has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989).

35. Having established the historical pedigree of invasion-of-privacy torts—in particular, the sub-species applicable to the public disclosure of private facts—we next consider whether Defendant's alleged statutory violation is sufficiently analogous.

36. Notably, the FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

37. And to that end, the statutory provision under which Plaintiff has sued here expressly prohibits a debt collector from "communicat[ing]" with any but a few persons or entities "in connection with the collection of any debt." *Id*. § 1692c(b).

38. Although § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

39. Although it presents a closer question, we conclude that "the judgment of Congress" also favors Plaintiff.

40. Congress, of course, expresses its "judgment" in only one way—through the text of duly enacted statutes.

41. Even assuming that § 1692c(b) does not clearly enough express Congress's judgment that injuries of the sort that Plaintiff alleges are actionable, here Congress went further to "explain itself." *Huff v. Telecheck Servs*., 923 F.3d 458, 466 (6th Cir. 2019).

42. In particular, as already noted, in a section of the FDCPA titled "Congressional findings and declaration of purpose," Congress identified the "invasion[] of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

43. Because (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of §1692c(b) constitute a concrete injury, Plaintiff has the requisite standing to sue.

## **CLAIMS FOR RELIEF**

### COUNT I:
### Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq.*

44. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

### Violation of 15 U.S.C. § 1692c

45. Section 1692c(b) states that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer. 15 U.S.C. §1692c(b).

46. Defendant's transmittal of Plaintiff's personal information to CompuMail constitutes a "communication" as defined by 15 U.S.C. § 1692a(2).

47. Defendant's communication with CompuMail was in connection with the collection of Plaintiff's $785.08 Jared Card account balance.

48. Specifically, Defendant's transmittal to CompuMail included specific details regarding Plaintiff's debt: Plaintiff's status as a debtor, the precise amount of her debt, the entity to which the debt was owed, and the fact that the debt concerned Plaintiff's Jared Card account, among other things.

49. Defendant's communication to CompuMail was without the prior consent of Plaintiff, was without the express permission of a court of competent jurisdiction, and was not reasonably necessary to effectuate a postjudgment judicial remedy.

50. Defendant's communication to CompuMail was not to the consumer, the consumer's attorney, the consumer reporting agencies, the creditor, the attorney for the creditor, or the attorney for Defendant.

51. Accordingly, Defendant's communication to CompuMail violates 15 U.S.C. § 1692c(b).

52. Plaintiff may enforce the provisions of 15 U.S.C. § 1692c(b) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

    (1)    any actual damage sustained by such person as a result of such failure;

    (2)

        (A)    in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

    (3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiff requests the following relief:

A. a finding that Defendant violated 15 U.S.C. § 1692c(b);

B. an award of any actual damages sustained by Plaintiff as a result of Defendant' violation(s);

C. an award of such additional damages, as the Court may allow, but not exceeding $1,000.00;

D. an award of costs of this action, together with reasonable attorney's fees as determined by this Court; and

8

E.      an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: June 23, 2021                                          Respectfully submitted,

**ROSALINDA SALAS f/k/a ROSALINDA ROBINSON**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road
Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com

9